# NO. 12-17-00065-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *BENJAMIN WAYNE DECKARD,* *APPELLANT* | § | *APPEAL FROM THE 3RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *ANDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Appellant Benjamin Wayne Deckard appeals his three convictions for possession with the intent to deliver a controlled substance, and a separate conviction for possession of marijuana. In one issue, Appellant challenges the legal sufficiency of the evidence for each of his four convictions. We affirm.

## BACKGROUND

Appellant was charged by indictment with three counts of the offense of possession with the intent to deliver a controlled substance: methamphetamine in an amount of 200 grams or more but less than 400 grams;[1] cocaine in the amount of four grams or more but less than 200 grams;[2] and heroin in an amount of one gram or more but less than four grams.[3] Further, in a

---

[1] An offense is punishable by imprisonment in the Texas Department of Criminal Justice for life or for a term of not more than ninety-nine years or less than ten years, and a fine not to exceed $100,000, if the amount of the controlled substance to which the offense applies is, by aggregate weight, including adulterants or dilutants, 200 grams or more but less than 400 grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(e) (West 2017).

[2] An offense is a felony of the first degree if the amount of the controlled substance to which the offense applies is, by aggregate weight, including adulterants or dilutants, four grams or more but less than 200 grams. *See id.* § 481.112(d) (West 2017).

[3] An offense is a felony of the second degree if the amount of the controlled substance to which the offense applies is, by aggregate weight, including adulterants or dilutants, one gram or more but less than four grams. *See id.* § 481.112(c) (West 2017)

separate count, he was charged by indictment with the offense of possession of marijuana in an amount of five pounds or less, but more than four ounces.[4] He pleaded "not guilty" to all four charges.

At trial, officers with the Palestine Police Department described an investigation begun in April 2014 of a mobile home owned by Willie Leon Barnes located at 1118 North Forth Street, lot nine, in Palestine, Anderson County, Texas. One of the officers testified that during a ten day period in mid-April he observed multiple cars driving up to the mobile home and entering during mid-morning, midafternoon, and nighttime hours. The officer testified that this was indicative of a place that sells controlled substances. A search warrant was obtained and the residence entered at approximately 10:00 p.m. on April 23, 2014.

At the time officers entered the front door of the mobile home to execute the search warrant, other officers staked out the back door of the mobile home. Once officers entered the front door, Appellant, Xavier Wiggins, and Donald Drew Nixon fled together from the mobile home through the back door. Nixon was found with $1,788.00 in cash on his person, and was carrying a cellular telephone. According to one of the officers, Appellant had to be physically tackled by officers because he was running from them. After Appellant was detained, he stated that Nixon contacted him to drive a blue Jeep Grand Cherokee that was located at the mobile home at the time of the search warrant's execution. According to Appellant, he dropped the Jeep off at the mobile home that day about five o'clock in the morning and was waiting for a ride. Another officer testified that Appellant was extremely vague in his responses to questioning and could not give any definitive answers, such as who was coming to pick him up. The officer testified that Appellant appeared to be trying to dodge the question of why he was present at the mobile home for five hours.

Another officer testified concerning the quantity of methamphetamine, cocaine, heroin, and marijuana found in the mobile home. Virtually all of the controlled substances were found in the master bedroom of Barnes's mobile home. However, there were two grams of crack cocaine found in plain view on the counter in the kitchen. The officer also testified as to drug paraphernalia found in the mobile home, including digital scales, razor blades, plastic sandwich baggies, and a pie tin with slice marks which tested positive for cocaine.

---

[4] An offense is a state jail felony if the amount of marijuana possessed is five pounds or less, but more than four ounces. *See id.* § 481.121(b)(3) (West 2017).

2

An officer with the Texas Department of Criminal Justice testified that a narcotics dog, "Smoke," was brought to the scene after the search warrant was served. The officer testified that Smoke alerted to an odor of narcotics in the Jeep. Further, one of the officers testified that the Jeep's carpet had been pulled away from the side and the panels were loose. The officer also stated that the carpet could be easily pulled back to hide contraband. A week after the search warrant had been served, Corporal Matthew Kerr testified that Barnes made a written statement to him. In Barnes's statement, he implicated Appellant in the narcotics operation, stating that he was brought in to run the "trap," or "dope house," that he was at the house the entire time unless he "ran to the store for something," and he "would come right back." He said that it was Appellant's job to run the day-to-day operation and make runs to pick up the contraband for Nixon, the leader of the narcotics operation. Barnes also stated that Appellant transported methamphetamine to his mobile home in the Jeep that was found in Barnes's driveway.

At the conclusion of the trial, the jury found Appellant guilty of three counts of possession with the intent to deliver a controlled substance, and one count of possession of a usable quantity of marijuana as charged in the indictment. The jury assessed Appellant's punishment at sixty years of imprisonment for count 1, sixty years of imprisonment for count 2, fifty years of imprisonment for count 3, and two years of state jail for count 4. The sentences were to run concurrently. This appeal followed.

## LEGAL SUFFICIENCY

In his sole issue on appeal, Appellant contends that the evidence is legally insufficient to support his conviction on all four counts. More specifically, he argues that there was no accomplice witness testimony, and that there was no evidence that he was present in the same location where the controlled substances were found.

### Standard of Review

In Texas, the *Jackson v. Virginia* standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Under the *Jackson* standard, the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of the crime beyond a reasonable

doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The responsibility of the trier of fact is to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id*. The jury is the exclusive judge of the credibility of witnesses and the weight to be given their testimony. *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000). Likewise, reconciliation of conflicts in the evidence is within the exclusive province of the jury. *Id*. Because the jury is the sole judge of a witness's credibility, and the weight to be given the testimony, it may choose to believe some testimony and disbelieve other testimony. *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008).

**Applicable Law**

A person commits an offense if that person knowingly possesses with intent to deliver a controlled substance listed in penalty group 1. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (West 2017). Methamphetamine, cocaine, and heroin are controlled substances listed in penalty group 1. *Id*. § 481.102(2), (3)(D), (6) (West Supp. 2017). A person commits an offense if that person knowingly or intentionally possesses a usable quantity of marijuana. *See id.* § 481.121(a) (West 2017).

Article 38.14 of the Texas Code of Criminal Procedure provides that a conviction cannot be had upon the testimony of an accomplice unless it is corroborated with other evidence tending to connect the defendant with the offense. TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). When evaluating the sufficiency of corroborative evidence, we "'eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime.'" *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008) (quoting *Solomon v. State*, 49 S.W.3d. 356, 361 (Tex. Crim. App. 2001)). The testimony that is eliminated from consideration is that testimony given by live witnesses speaking under oath in court. *Torres v. State*, 137 S.W.3d 191, 196 (Tex. App.—Houston [1st Dist.] 2004, no pet.). In other words, only an accomplice's in-court testimony need be corroborated. *Bingham v. State*, 913 S.W.2d 208, 211-13 (Tex. Crim. App. 1995). Moreover, an accomplice's testimony cannot be corroborated by prior statements made by the accomplice witness to a third person. *Smith v. State*, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011).

"Possession" is defined as "actual care, custody, control or management." TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West 2017). To prove unlawful possession of a controlled substance, the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). Whether this evidence is direct or circumstantial, it must establish to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous. *Id*. at 405-06. When the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband. *Id*.

The courts have identified the following factors that may link an accused to a controlled substance:

- the accused's presence when a search is conducted;

- whether the contraband was in plain view;

- the accused's proximity to and the accessibility of the narcotic;

- whether the accused was under the influence of narcotics when arrested;

- whether the accused possessed other contraband or narcotics when arrested;

- whether the accused made incriminating statements when arrested;

- whether the accused attempted to flee;

- whether the accused made furtive gestures;

- whether there was an odor of contraband;

- whether other contraband or drug paraphernalia were present;

- whether the accused owned or had the right to possess the place where the narcotics were found;

- whether the place where the narcotics were found was enclosed;

- whether the accused was found with a large amount of cash; and

- whether the conduct of the accused indicated a consciousness of guilt.

5

***Evans v. State,*** 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006).  A number of factors present is not as important as the logical force the factors create to prove the accused knowingly possessed the controlled substance.  ***Hebert v. State***, 489 S.W.3d 15, 19 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

<u>**Analysis**</u>

In his brief, Appellant first contends that the accomplice witness's testimony was not corroborated. More specifically, he argues, the accomplice witness, Barnes, stated that he lied in his previous statement to law enforcement that Appellant was involved in the narcotics operation at his residence. Therefore, he contends, there is no accomplice witness. In support of his argument, he cites ***Loa v. State***, 545 S.W.2d 837 (Tex. Crim. App. 1977).  In ***Loa***, there were two accomplice witnesses as a matter of law. *See **Loa***, 545 S.W.2d at 839. In the undisputed record, however, the court found that appellant was only a visitor to the house occupied by the two accomplice witnesses, stating that no contraband was discovered in the bedroom where appellant and one accomplice witness were arrested. ***Id.*** Thus, the court found that the mere presence of the appellant in the accomplice witnesses's house, under the circumstances shown, without more, was insufficient to tend to connect appellant with the commission of the offense charged. ***Id.*** However, ***Loa*** is not applicable to Appellant's issue regarding the accomplice witness. Appellant argues there is no accomplice witness because Barnes lied, not whether he was merely present with the accomplice witness at the scene of the offense.

We find ***Bingham*** more illustrative. *See **Bingham***, 913 S.W.2d at 211-13. In ***Bingham,*** the Court of Criminal Appeals determined that an out-of-court statement made by an accomplice need not be corroborated and that only the in-court testimony of an accomplice must be corroborated. *See **id.*** The court in ***Bingham*** noted the inherent reliability of an accomplice's out-of-court statement when it falls within an exception to the hearsay rule, stated the court's belief that the legislature "did not regard such statements with the same degree of suspicion as it did an accomplice witness who testifies in court," and effectuated legislative intent by "read[ing] Article 38.14 to embrace only the in-court 'testimony' of an accomplice." ***Id.*** at 211; *see **Archie v. State***, 340 S.W.3d 734, 737 n.3 (Tex. Crim. App. 2011) (citing ***Bingham*** and stating that the testifying accomplice's "out-of-court statement did not itself have to be corroborated under Article 38.14").

In this case, Barnes made a written statement to Kerr, implicating Appellant in the narcotics operation. He said that it was Appellant's job to run the day-to-day operation, that he rarely left the mobile home during the time that the operation was in business, and that he made runs to pick up contraband for Nixon. Barnes also stated that Appellant transported methamphetamine to his mobile home in the Jeep that was found in Barnes's driveway. However, at trial, Barnes retracted his statement, saying that "they basically told [him] what to say" and that Kerr failed to read him his *Miranda* rights. He stated that he lied in his statement to Kerr because he was told that his charges would be reduced or dropped if he made a statement. He also testified that Appellant had nothing to do with the narcotics operation, and was only at his house for about thirty minutes before the search warrant was executed. Barnes also testified that he told the district attorney a few minutes before testifying at trial that his prior witness statement was based on what he told Kerr, i.e., that his previous statement was the truth. As noted above, only an accomplice's in-court testimony need be corroborated. *See* **Bingham**, 913 S.W.2d at 211-13. Thus, Barnes's out-of-court statement was not testimony within the meaning of Article 38.14. Accordingly, we need not address the sufficiency of the corroborating evidence.

Secondly, Appellant argues that there is no evidence connecting him to the contraband found in the house or that he was in a room where the contraband or drug paraphernalia was discovered, citing **Alvarado v. State**, 632 S.W.2d 608 (Tex. Crim. App. 1982). In **Alvarado**, which involved burglary of a building, the court found that probative evidence established only that appellant was present at the scene of the crime, not a participant. **Alvarado**, 632 S.W.2d at 610. In this case, however, the evidence establishes that Appellant was actively involved in the narcotics operation in the mobile home.

The evidence shows that Appellant was present when the search warrant was served, and he attempted to flee through the back door of the mobile home. He had to be physically tackled by officers because he was running from them. After Appellant was detained, he was unable to explain why he had been in the mobile home for five hours after driving and dropping off the Jeep. The officers found him to be extremely vague and noticed that he could not give them any definitive answers, such as who was going to pick him up. Further, the narcotics dog alerted to an odor of contraband in the Jeep, and the carpeting had been pulled away as if to hide contraband. The evidence also showed that the controlled substances were within the mobile home, an enclosed structure. Some of the contraband was in plain view on the kitchen counter of

7

the mobile home, giving Appellant access to the narcotics. Moreover, drug paraphernalia was present in the mobile home including digital scales, razor blades, plastic sandwich bags, and a pie tin with slice marks. Further, Barnes implicated Appellant in the narcotics operation, stating that he was brought in to run the "trap," or "dope house," that he was at the house the entire time unless he "ran to the store for something," and he "would come right back." He said that it was Appellant's job to run the day-to-day operation and make runs to pick up contraband for Nixon. Barnes also stated that Appellant transported methamphetamine to his mobile home in the Jeep that was found in Barnes's driveway.

This evidence supported a reasonable inference that Appellant was involved in, and an active participant in, the narcotics operation in the mobile home. *See* **Evans**, 202 S.W.3d at 162 n.12. Appellant did not find himself in the midst of this ongoing drug operation by mere happenstance. Our role is not to view each factor in isolation; instead, we must view all these factors in their totality, and consider all of the State's evidence in determining whether the State met its burden of proof. *See* **id.** at 164-66. Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational jury could have found each element of possession with intent to deliver a controlled substance, three counts, and possession of a usable amount of marijuana beyond a reasonable doubt. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.112(a), 481.121(a). We overrule Appellant's sole issue.

<u>**DISPOSITION**</u>

Having overruled Appellant's sole issue, we *affirm* the judgment of the trial court.

<u>**JAMES T. WORTHEN**</u>
Chief Justice

Opinion delivered November 30, 2017.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

8



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**NOVEMBER 30, 2017**

**NO. 12-17-00065-CR**

**BENJAMIN WAYNE DECKARD,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 3rd District Court

of Anderson County, Texas (Tr.Ct.No. 31819)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*